# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN
# CIVIL ACTION NO. 1:13-CV-P172-M

**RICKY DOUGLAS McCARLEY**                                           **PLAINTIFF**

**v.**

**LOGAN COUNTY DETENTION CENTER et al.**                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ricky Douglas McCarley, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed in part and allowed to proceed in part.

## I. SUMMARY OF CLAIMS

Plaintiff sues Logan County Detention Center (LCDC) Jailer Bill Jenkins in his individual and official capacities, as well as the LCDC. Plaintiff states that he was incarcerated at LCDC from September 19, 2012, until July 24, 2013, in "unhealthy living conditions" which caused him to be sick with "terrible flu like" symptoms from two weeks after he arrived until he left. He also states that his hands became infected because of the diseases and germs from the jail "which [he] do[es] feel come from not having a proper cleaning protectant supplies where we had to clean mold . . . ." Plaintiff further states, "There was no way they could stop the mold an[d] sicking envirorement, well none they used anyway, but the Jailer still let his staff to continue to house me there."

Plaintiff alleges that he was so miserable that he wanted to kill himself but when he let "them" know he was considering suicide "they" stripped him naked and kept him in a room up

front where "everyone in jail" could see him. Plaintiff states that "it was so embarrassing an they would keep [him] there for weeks until [he] had to lie to them to get out by saying" he was alright, even though he was not.

Plaintiff further alleges that his cell was overcrowded 98% of the time, housing 15-17 inmates instead of the seven inmates which it was equipped for. He states inmates had to walk on inmates' mats, at times inmates had to sleep on the floor, and there was only one commode. He states that he asked to be moved to another jail but his request was refused.

Finally, Plaintiff alleges that he was on "physc. Medication" when he arrived at LCDC "but they would not refill my prescription." He alleges that if his prescription had been refilled, he would not have suffered suicidal thoughts. He states that LCDC "did give [him] a depression pill which couldn't help [his] emotional thoughts. It did absolutely nothing for [him]."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true.

*Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Claim regarding unsanitary prison conditions*

Plaintiff states that he was incarcerated at LCDC from September 19, 2012, until July 24, 2013, in "unhealthy living conditions" which caused him to be sick from two weeks after he arrived with "terrible flu like" symptoms until he left. He also states that his hands became infected because of the diseases and germs from the jail "which [he] do[es] feel come from not having a proper cleaning protectant supplies where we had to clean mold . . . ." He alleges that his hands are still infected. He alleges, "Mold would come from the walls roofs daily sweating I feel it was airborne that got me sick and no protecant gloves and mask they got my hands there infections which I still have." Plaintiff further states, "There was no way they could stop the mold an[d] sicking enviroment, well none they used anyway, but the Jailer still let his staff to continue to house me there."

If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against the jailer of LCDC in his official capacity are actually brought against Logan County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Logan County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional

3

violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)

4

(citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Reading the complaint liberally, Plaintiff appears to have alleged that a policy or custom of Logan County caused him to be sick. The Court will allow this claim to continue. The Court will also allow this claim to continue against Defendant Jenkins in his individual capacity.

*Claim regarding suicide watch*

Plaintiff alleges that when he admitted to suicidal thoughts he was stripped naked and kept in a room up front where "everyone in jail" could see him. Plaintiff found this situation so embarrassing that he eventually, falsely, stated that he was not suicidal.

There is no constitutional right to avoid being placed on suicide watch. *See Reynolds v. Mattson*, No. 2:07-CV-59, 2008 WL 2704750, at * 1 (W.D. Mich. July 9, 2008) ("Plaintiff's placement and treatment in the suicide observation cell does not amount to cruel and unusual punishment, even if such actions were not for a legitimate purpose."); *Brown v. Caruso*, No. 2:07-CV-140, 2008 WL 299030, at *4 (W.D. Mich. Feb. 1, 2008) (finding that "Plaintiff's claim that he was placed in suicide watch does not rise to the level of an Eighth Amendment violation.").

However, courts have found that being stripped naked is a particularly severe intrusion on the right to privacy. *Cf. Johnson v. City of Kalamazoo*, 124 F. Supp. 2d 1099, 1104 (W.D. Mich. 2000) (identifying cross-gender strip searches as "relatively serious intrusions" on the right to privacy compared to a case where male plaintiffs are "allowed to keep their underwear and t-shirts and maintain a minimal measure of modesty"). For instance, in *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992), the Sixth Circuit recognized the facial validity of a

5

Fourth Amendment invasion of privacy claim where male prisoners were allegedly strip searched outside in the prison yard in the presence of other inmates and female officers.

Taking as true Plaintiff's allegation that he was stripped naked[1] and kept in a room where "everyone in jail" could see him, and it appearing that these actions were taken pursuant to LCDC suicide-watch policy, the Court will allow Plaintiff's Fourth Amendment claim that he was held on suicide watch naked to proceed against LCDC.

*Claim regarding overcrowding*

Plaintiff alleges that his cell, which was designed to hold seven inmates (and had only only commode) regularly held 15-17 inmates. He alleges that this overcrowding resulted in inmates having to walk on other inmates' mats and sometimes having to sleep on the floor.

Overcrowding in a prison is not itself a violation of the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Overcrowding conditions can be restrictive and even harsh; however, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Id*. at 348. Plaintiff's allegations that his cell is crowded and at times inmates must sleep on the floor are not deprivations of the minimal civilized measure of life's necessities, and, as such, fail to state an Eighth Amendment claim. *See Brodak v. Nichols*, No. 97-1688, 1998 WL 553032, at *1 (6th Cir. Aug. 17, 1998) ("Although Brodak may have been subjected to uncomfortable conditions, he does not allege with any specificity that he was denied essential food, basic sanitation, or safe temperatures."). And Plaintiff does not allege that having only one commode in the overcrowded cell led to

---

[1]In researching civil rights allegations arising out of prison suicide watch, the Court notes that usually the prisoner on suicide watch is provided with special clothes, often referred to as a suicide gown or a suicide prevention gown.

sanitation problems. This claim will be dismissed.

*Claim regarding prescriptions*

Plaintiff alleges that he was on "physc. Medication" when he arrived at LCDC, "but they would not refill my prescription." He alleges that if his prescription had been refilled, he would not have suffered suicidal thoughts. He states that LCDC "did give [him] a depression pill which couldn't help [his] emotional thoughts. It did absolutely nothing for [him]."

Here, Plaintiff has not alleged a custom or policy of LCDC. Nor does he allege any personal involvement by Defendant Jenkins. Moreover, it appears that some action, although not helpful, was taken in an attempt to alleviate Plaintiff's depression. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). This claim will be dismissed for failure to state a claim.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims relating to overcrowding and his prescription medication are **DISMISSED** pursuant to § 1915A(B)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Scheduling Order to govern the development of Plaintiff's continuing claims regarding unsanitary prison conditions against Defendants LCDC and Jenkins in his individual capacity and against LCDC on Plaintiff's claim that he was held on suicide watch naked. In allowing those claims to continue, the Court expresses no opinion on

their ultimate merit.

Date: June 26, 2014

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
Logan County Attorney
4414.009